J-A29029-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| MICHAEL L. JACKSON | : | |
| Appellant | : | No. 394 WDA 2025 |

Appeal from the PCRA Order Entered March 12, 2025
In the Court of Common Pleas of Butler County Criminal Division at
No(s): CP-10-CR-0001404-2018

BEFORE: OLSON, J., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.: **FILED: April 9, 2026**

Appellant, Michael L. Jackson, appeals from the order entered on March 12, 2025, denying his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

We previously set forth the facts and procedural history of this case[1] as follows:

> Briefly, the Butler City Police and Pennsylvania Office of the Attorney General conducted an investigation into [Appellant's] drug dealing activity in June of 2018. They used a confidential informant to execute a controlled buy of 16 stamp bags of heroin from [Appellant] at his home. After the controlled buy, they obtained a search warrant for the home and recovered numerous narcotics and items of paraphernalia to package and process the narcotics.

---

[1] We set forth the facts of the instant case in more detail on direct appeal. ***See Commonwealth v. Jackson***, 638 WDA 2020, 2021 WL 4059949, at *1-5 (Pa. Super. 2021) (non-precedential decision).

> Law enforcement found a powdery substance scattered about the second floor of the home that later tested positive for a mixture of heroin, cocaine and fentanyl. In [Appellant's] bedroom, they found heroin, cocaine, stamp bags, gloves, digital scales and other assorted paraphernalia. [Appellant] was searched incident to arrest and officers recovered a small plastic bag containing blue pills from his rectum. Those pills tested positive for fentanyl.

*Commonwealth v. Jackson*, 301 A.3d 893, 2023 WL 3918403, at *1 (Pa. Super. 2023) (non-precedential decision).

Following a trial on June 26, 2019, a jury convicted Appellant of conspiracy to commit possession with intent to deliver (PWID), two counts of PWID, criminal use of a communication facility, two counts of possession of a controlled substance (simple possession) and possession of drug paraphernalia.[2] Thereafter,

> [t]he trial court sentenced [Appellant] to an aggregate of 117 months to 234 months' incarceration followed by two years' probation. On direct appeal, we held that the evidence was insufficient to support five of the conspiracy charges and remanded for resentencing on the remaining charges. On remand, the trial court initially resentenced [Appellant] to an aggregate of 108 to 216 months' incarceration. This included a sentence of 30 to 60 months' incarceration on PWID at Count 4 and 12 to 24 months' incarceration on simple possession of fentanyl at Count 13. [Appellant] filed post-sentence motions that were granted in part and denied in part following oral argument. The trial court modified his sentence at Count 8, simple possession of multiple narcotics, to no further penalty, finding that it merged with Count 4. Thus, the aggregate sentence was reduced to 96 to 102 months. [Appellant] timely appealed[.]

---

[2] 18 Pa.C.S.A § 903 (conspiracy); 35 P.S. § 780-113(a)(30) (PWID); 18 Pa.C.S.A. § 7512(a) (criminal use of a communication facility); 35 P.S. § 780-113(a)(16) (simple possession), and 35 P.S. § 780-113(a)(32) (possession of drug paraphernalia).

*Id.* at *2. We affirmed Appellant's judgment of sentence on June 9, 2023.
*Id.* at *4.

Appellant filed a *pro se* PCRA petition on July 24, 2023. The PCRA court appointed counsel who filed an amended PCRA petition on April 29, 2024. The PCRA court held an evidentiary hearing on November 21, 2024. On March 12, 2025, the PCRA entered an order denying Appellant relief. This timely appeal resulted.[3]

On appeal, Appellant presents five issues for our review:

A. Whether trial counsel was ineffective for presenting Appellant as a drug addict to the jury and conceding guilt [regarding simple possession] on the part of Appellant without Appellant's consent or prior notice to Appellant before using said argument as a defense[?]

B. Whether trial counsel was ineffective for failing to move to exclude the official pre-recorded funds[, used by the confidential informant, from being presented] at trial[?]

C. Whether trial counsel was ineffective for stipulating to the contents of lab results which were entered into evidence at trial[?]

D. Whether trial counsel was ineffective for failing to present the confidential informant's friendship with Appellant's co-defendant which motivated the confidential informant to inculpate Appellant *in lieu* of the co-defendant[?]

E. Whether trial counsel was ineffective for failing to request jury instruction 4.06 (testimony subject to special scrutiny)[?]

---

[3] Appellant filed a notice of appeal on April 2, 2025. On April 17, 2025, the PCRA court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on May 7, 2025. On May 9, 2025, the PCRA court filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant's Brief at 22, 29, 31, 34, and 36.[4]

This Court adheres to the following standards:

> We consider the record in the light most favorable to the prevailing party at the PCRA level. This review is limited to the evidence of record and the factual findings of the PCRA court. We afford great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. Accordingly, as long as the PCRA court's ruling is free of legal error and is supported by record evidence, we will not disturb its ruling. Nonetheless, where the issue pertains to a question of law, our standard of review is *de novo* and our scope of review is plenary.
>
> *       *       *
>
> Counsel is presumed to have rendered effective assistance. To establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Pointer*, 348 A.3d 1216, 1227 (Pa Super. 2025) (internal citations omitted).

In his first issue presented, Appellant contends that trial counsel rendered ineffective assistance at trial for "paint[ing] Appellant as a drug

---

[4] Although our review is unhampered, we remind Appellant's counsel to set forth all of the questions presented on appeal in a single statement pursuant to Pa.R.A.P. 2111(4).

abuser" by conceding during opening and closing arguments that Appellant "had possessed and used drugs, *i.e.*, that Appellant had committed an illegal act." Appellant's Brief at 17 and 25-26. "Appellant is adamant he never consented to trial counsel conceding any criminal conduct on his part" and that counsel should have focused "on the blatant errors committed by law enforcement [and] the [confidential informant's] motive to lie to protect the co-defendant, a childhood friend." *Id.* at 27. Appellant argues that this claim has arguable merit, there was no reasonable basis or strategy for the concession, and there is a reasonable probability the result would have been different. *Id.* at 28. Hence, Appellant argues that "said ineffectiveness warrants the grant of a new trial." *Id.*

On this issue, the PCRA court determined that "the evidence produced at trial overwhelmingly established [Appellant's] guilt for possession of controlled substances." PCRA Court Opinion, 5/9/2025, at 2. Citing this Court's decision on direct appeal, the PCRA court observed that we detailed the recovery of narcotics purchased from Appellant by a confidential informant, as well as narcotics found throughout Appellant's residence and discovered in Appellant's rectum in subsequent searches. *Id.* at 3. Here, there was overwhelming evidence Appellant possessed narcotics. As such, there was a reasonable basis for trial counsel to concede simple possession and there is no evidence of prejudice because trial counsel's concession did

not change the outcome of the trial.[5]  Thus, we agree with the PCRA court's

assessment that "there is no reasonable probability that the outcome of trial

_____

[5] We note that trial counsel testified at the PCRA hearing and stated that "given the weight of the evidence" and the "amount of drugs found" it would not have been credible to argue Appellant "did not have possession of those drugs whatsoever."  PCRA Hearing, 11/21, 2014, at 14-15.  As such, trial counsel conceded that Appellant possessed the narcotics for personal use.  To prove PWID, this Court has previously determined:

> The Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance. It is well settled that all the facts and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with the intent to deliver.
>
> In Pennsylvania, the intent to deliver may be inferred from possession of a large quantity of controlled substances. It follows that possession of a small amount of a controlled substance supports a conclusion that there is an absence of intent to deliver.
>
> If, when considering only the quantity of a controlled substance, it is not clear whether the substance is being used for personal consumption or distribution, it then becomes necessary to analyze other factors. In these cases, the quantity of the controlled substance is but one factor that we look to in analyzing whether a defendant had the necessary intent to deliver a controlled substance. Other factors to consider when determining whether a defendant intended to deliver a controlled substance include the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large sums of cash found in possession of the defendant. Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use.
>
> Not all of these factors must be present to prove the intent to deliver a controlled substance, nor must they be given equal

*(Footnote Continued Next Page)*

would have been different had trial counsel used a different strategy and not the drug addict defense." PCRA Court Opinion, 5/9/2025, at 3.

Next, Appellant argues that "[t]rial counsel was ineffective for failing to move to exclude the pre-recorded funds" which were "allegedly recovered" during the execution of the search warrant. Appellant's Brief at 29. Appellant claims that "the Commonwealth failed to turn over discovery related to the pre-recorded funds until the eve of trial" and that pursuant to Pennsylvania Rule of Criminal Procedure 573, trial counsel should have requested preclusion. *Id.* at 30. Appellant asserts that "he specifically asked [trial] counsel to file a motion to exclude the evidence as he feared the jury would be tainted by the mere mention of pre-recorded funds." *Id.*

The PCRA court first noted that there was no discovery violation, because "trial counsel did receive [the pre-recorded funds in] discovery prior to trial, and he testified that he had adequate time to review and formulate a strategy[.]" PCRA Court Opinion, 5/9/2025, at 3. Therefore, the PCRA court concluded that Appellant was "simply unable to argue that the [trial c]ourt

_____

weight. When viewing the totality of the circumstances, however, these are the specific factors considered by this Court.

*Commonwealth v. Earl Jackson*, 645 A.2d 1366, 1368 (Pa. Super. 1994) (internal citations and quotations omitted). Here, faced with PWID charges, trial counsel also had a reasonable basis for admitting Appellant used narcotics for personal use. *See Commonwealth v. McCready*, 295 A.3d 292, 297 (Pa. Super. 2023) (brackets omitted) (Generally, "we may affirm the decision of the PCRA court if there is any basis on the record to support the PCRA court's action; this is so even if we rely on a different basis in our decision to affirm.").

would have granted relief." **Id.** As such, the PCRA court found no merit to Appellant's ineffective assistance of counsel claim. Upon review, we agree. Pennsylvania Rule of Criminal Procedure 573(E) provides that "the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances" but only "if at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with" discovery. Pa.R.Crim.P. 573(E). As there was no discovery violation, the trial court could not preclude evidence of the pre-recorded funds under Rule 573. Hence, Appellant's second claim of ineffective assistance of trial counsel fails.

Next, Appellant argues that trial counsel was ineffective for stipulating to the contents of a laboratory report regarding the narcotics contained within the blue pills recovered from his person. Appellant's Brief at 31-34. More specifically, Appellant posits:

> [T]estimony presented at trial indicated that [the blue pills] contained both oxycodone and fentanyl. However, the lab report was unclear as to whether oxycodone was actually found in the sample. While the report indicated that the markings on the pills were *consistent* with oxycodone, the sampling tested was determined to contain fentanyl with no confirmation whether actual oxycodone was found.
>
> At the PCRA hearing, Appellant called Douglas Samber, the forensic scientist with the Pennsylvania State Police who tested the narcotics in question. He credibly testified that [the blue pills]

- 8 -

never contained oxycodone and only fentanyl. He further opined that the testimony at trial that the item contained oxycodone was false. As such, counsel was clearly ineffective [for] stipulating to the lab results.

*Id.* at 19-20.

With regard to the laboratory report, the PCRA court found no merit to the claim or resulting prejudice to Appellant. PCRA Court Opinion, 5/9/2025, at 4. More specifically, the PCRA court found that "there was no reasonable probability that the outcome would have been different if Mr. Samper had been subpoenaed and subjected to cross-examination." *Id.* The PCRA court further credited trial counsel's testimony that "stipulating to lab reports is a standard defense strategy" and that trial counsel "did not want to sit an expert [on the stand] to talk for 30 to 40 minutes" about fentanyl and heroin "on the off chance of getting [the expert] to say, oh, maybe there was no oxycodone in there." *Id.* (record citations omitted).

Upon review, we agree that Appellant is not entitled to relief on this claim. At the PCRA hearing, Douglas Samper testified that he received 16 tablets to test for narcotics, only 10 pills were actually analyzed due to time constraints, and that all the tested pills contained only fentanyl. N.T., 11/21/2024, at 5-6. However, Samper testified that all of the pills were imprinted with the letter "M" on one side and "30" on the other side, which "markings are consistent with tablets containing oxycodone." *Id.*; *see also id.* at 8 ("[I]f they were legitimate tablets, [the markings as specified in] the Drug ID Bible, [indicate those pills were] supposed to be oxycodone hydrochloride 30 milligrams."). Moreover, Samper's expert report presented

at trial specified that he had a "95% confidence level that at least 80% of the tablets contained … fentanyl." ***Id.*** at 7; ***see also id.*** at 8 ("I'm saying there's a 95% chance 80% of them contained the flurorisobutyryl fentanyl."). He further explained that "[i]t's fairly common that [police labs analyze] fake tablets." ***Id.*** at 9. Ultimately, however, Samper testified that "the only way that [he] could say that 100% of those tablets did not contain oxycodone was if [he] tested all 16 of them" which he did not do. ***Id.*** at 7.

Here, the blue pills were marked as, and resembled, oxycodone. The lab technician did not test every pill to determine if, in fact, oxycodone was completely absent. Because there was a 95% chance that at least 80% of the recovered pills contained fentanyl, it is not entirely clear whether oxycodone was present in the remaining pills. However, due to the overwhelming evidence that Appellant possessed heroin and fentanyl with the intent to deliver it, we do not find that Appellant was prejudiced by stipulating to the laboratory report and allowing the Commonwealth to argue that oxycodone was recovered.

Finally, Appellant's last two appellate issues are inter-related, so we will examine them together. First, Appellant "avers that his co-defendant" and the confidential informant "in this case … were childhood friends." Appellant's Brief at 34. Appellant claims that trial counsel was ineffective for failing to establish the confidential informant's "motive … to perjure himself in defense of his friend." ***Id.*** at 35. Next, with regard to the confidential informant's trial testimony, Appellant argues that counsel should have requested Pennsylvania

Suggested Standard Criminal Jury Instruction 4.06 (Testimony Subject to Special Scrutiny). *Id.* at 36. Ultimately, Appellant concludes that "[w]hile the relationship between [the co-defendant and the confidential informant] was vaguely referenced during trial, largely in part due to the ineffectiveness of trial counsel to further pursue the apparent bias, [trial counsel] also failed to request the [trial c]ourt give this particular instruction highlighting the relationship between the [confidential informant] and the co-defendant, and that said testimony should be scrutinized by the jury during deliberations." *Id.* at 37.

Here, the PCRA court rejected Appellant's last two claims. PCRA Court Opinion, 5/9/2025, at 4-5. Initially, the PCRA court noted that "the trial record does not indicate that the [confidential informant] attempted to hide his friendship with the [c]o-[d]efendant or to mitigate the [c]o-[d]efendant's involvement." *Id.* at 5. Upon review, we agree. At trial, the confidential informant testified that he "went to school" with the co-defendant. N.T., 6/24/2019, at 80. The confidential informant also stated that he "was asked to become an informant" after he previously purchased heroin and was caught by police. *Id.* at 77; *see also id.* at 86 (wherein informant admits that he started working for the police after he was found in possession of heroin and that he subsequently performed the controlled buy in this matter while serving probation). The confidential informant testified that he was not sure if Appellant was working with someone else. *Id.* at 78; *see also id.* at 80 ("Not sure if [co-defendant] was [working with Appellant] but I --- probably was; I

- 11 -

don't know."). However, the confidential informant also testified that he received text messages from the co-defendant, on the day of the controlled buy, asking where and when the informant was "coming to buy the drugs off" Appellant. *Id.* at 84. Finally, the informant testified that on the day of the controlled buy, he knew that the co-defendant was present inside the residence. *Id.* at 79. Moreover, the PCRA court credited trial counsel's PCRA hearing testimony that he believed that cross-examining the informant about his friendship with the co-defendant would further highlight a conspiracy. *Id.* PCRA Court Opinion, 5/9/2025, at 5, *citing* N.T., 11/21/2024, at 34.

With regard to Appellant's proposed jury instruction, the PCRA court noted that the jury was given the "standard instruction on general credibility of witnesses, Pa.S.S.J.I.(Crim) 4.17" which was "wholly adequate in instructing jurors as to judging witness credibility." *Id.* at 5. Here, the jury was aware that the confidential informant and co-defendant knew each other, and that both Appellant and co-defendant were potentially selling narcotics. Trial counsel examined potential motives for the confidential informant to testify in this matter, and the informant admitted to potential criminal liability while on probation. At the end of trial, the trial court instructed the jurors that the "[m]atter of the credibility of a witness, that is, whether his or her testimony is believable in whole or in part, is solely for your consideration." N.T., 6/25/2019, at 95. It further instructed that "some of the factors that might bear on that determination" include, *inter alia*, "[w]hether the witness has any interest in the outcome of the case" or "[h]as friendship or animosity

towards other persons concerned in this case." ***Id.*** As such, the jury was specifically instructed that they should consider potential friendships while making credibility determinations.

Based upon our review of the certified record and applicable law, Appellant is not entitled to relief on his last two appellate issues as presented. The jury heard testimony regarding the relationship between the co-defendant and the confidential informant, as well as the confidential informant's connections to this case. The trial court properly instructed the jury about credibility determinations. As such, trial counsel cannot be ineffective for failing to further establish the confidential informant's alleged motive to "perjure himself in defense of his friend" or to request a specialized jury instruction that the informant's testimony was subject to additional scrutiny. Accordingly, Appellant is not entitled to relief on his last two appellate issues as presented.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 4/9/2026